## WOOLSEY v. PANHANDLE REFINING CO.

### No. 13410.

Court of Civil Appeals of Texas. Fort Worth.

Sept. 25, 1936.

Rehearing Denied Oct. 23, 1936.

Kearby Peery and Philip S. Kouri, both of Wichita Falls, for appellant.

R. C. Stanford, of Canton, and A. H. Britain, of Wichita Falls, for appellee.

DUNKLIN, Chief Justice.

W. N. .Woolsey has appealed from a judgment of the district court sustaining a general demurrer to his petition and dismissing his suit after he declined to amend.

The following is quoted from appellant's brief as a statement of the cause of action alleged in his petition, to which the general demurrer was sustained:

"The plaintiff alleged in his original petition upon which he went to trial that he was employed by the defendant on September 1, 1926, when he suffered a severe injury to his spine, which entitled him to compensation; that the defendant carried compensation insurance; that he informed the defendant of his injuries and requested the defendant to file a claim for him before the Industrial Accident Board; that the defendant's general superintendent told him that their compensation rates were exceedingly high, and if his claim was filed the rates would be raised considerably higher; that if the plaintiff would not file his claim for compensation the defendant would employ him for life at his then current salary of $150.00 per month; that relying upon such offer and in acceptance thereof he, the plaintiff, did not file his claim; that the defendant complied with its contract for a period of seven years, but that on May 20, 1935, the plaintiff was discharged without just cause; that he, the plaintiff, was 46 years of age and had a life expectancy of twenty-three years.

"The plaintiff then prayed for judgment for $150.00 per month for 23 years, less what he could earn by the exercise of reasonable diligence in other work of the same or similar character of that in which he was engaged at the time he was discharged."

The two propositions presented in appellant's brief are, in substance: (1) That plaintiff's agreement not to file a claim for compensation with the Industrial Accident Board and his forbearance so to do was sufficient consideration to support the defendant's contract to give him employment for life; and (2) that the measure of damages for the defendant's breach of its contract is the amount claimed in his petition.

The first proposition is challenged by appellee, and that is the principal question to be discussed here.

Appellant relies upon the decision of the Court of Civil Appeals at Dallas in the case of Duff v. Ford Motor Co., 91 S.W. (2d) 871, 872, and other decisions cited in the opinion in that case. That was a suit by Duff to recover damages for breach of defendant's contract to give him employment for life in consideration of his agreement to forbear presenting his claim for compensation against the compensation insurer under the Workmen's Compensation Act (Vernon's Ann.Civ.St. art. 8306 et seq.), just as in this case. Indeed, the facts alleged and relied on by plaintiff Duff cannot be distinguished from the facts relied on by plaintiff in this suit with respect to whether or not the same were sufficient to show a right of recovery against the defendant company, who was Duff's employer. In that case the trial court sustained a general demurrer to plaintiff's petition just as in this case, and the Court of Appeals at Dallas reversed that judgment and remanded the cause. We quote from the opinion in that case as follows:

"Is the contract supported by a valuable consideration? Under the facts alleged and under the Workmen's Compensation Law, appellee gave up no right that could have accrued to it when appellant waived his right to prosecute his claim for compensation against the compensation carrier; hence, without itself receiving anything of value, executed the alleged contract of employment. If this were all, then, of course, there was a failure of consideration. However, it is settled law in this state that, even though promisor receives nothing of value for his promise, if he thereby induces the promisee to surrender a valuable right, there is supplied the necessary valid consideration. 10 Tex. Jur. 135, § 78, announces the rule to be: 'A sufficient consideration to support a contract or promise, including a promise made by a third person, exists in an agreement to forbear bringing suit on a well-founded claim, or to forbear the prosecution of an action to enforce such a claim, followed by actual forbearance. But to constitute a consideration the forbearance to sue must be based upon an agreement to forbear; the agreement must be made in respect of a well-founded claim; and there must also be some person liable to suit therefor.' This text is supported by many authorities cited in the footnotes, and they are here cited; in addition thereto see: Merchants' Nat. Bank v. Voudouris (Tex.Civ.App.) 248 S.W. 810; James v. Fulcrod, 5 Tex. 512 [521], 55 Am.Dec. 743. We therefore hold that the contract is supported by sufficient consideration.

"Is the contract so vague and indefinite in respect to the element of time as to render it unenforceable, except at the will of either party? It is well settled in this state that a contract of employment for life, if based on sufficient consideration, is not vague and indefinite as to time and is enforceable. East Line & R. R. Ry. Co. v. Scott, 72 Tex. 70, 10 S.W. 99, 13 Am. St.Rep. 758; Id., 75 Tex. 84, 12 S.W. 995; Texas Cent. R. Co. v. Eldredge (Tex.Civ.App.) 155 S.W. 1010, 1011; Lennard v. Texarkana Lumber Co., 46 Tex. Civ.App. 402, 94 S.W. 383."

In appellant's brief this is said:

"The writer represents to the Court that the authorities cited by the Dallas Court of Civil Appeals in the Duff Case, supra, are directly in point and constitute the law in Texas, today. He filed this suit on the authority of Texas Central R. Co. v. Eldredge (Tex.Civ.App.) 155 S.W. 1010 (writ of error refused). Other authorities, which are equally as well in point, are cited by Chief Justice Jones of the Dallas Court.

"We, therefore, respectfully request this Honorable Court to follow the opinion of the Dallas Court and to reverse and remand this cause with instructions to the trial court to overrule the general demurrer and to proceed to trial on the merits."

By counter proposition appellee presents the contention that plaintiff's agreement not to file his claim with the Industrial Accident Board for compensation was forbidden by the Workmen's Compensation Act, and, being illegal, it could not be a sufficient consideration for the alleged contract of the defendant upon which a recovery was sought. Apparently, that point was not discussed in the opinion in the Duff Case, and it may be assumed that the same objection was not urged in that case, either in the trial court or in the Court of Appeals. And it does not appear that a writ of error was ever applied for in the Supreme Court.

Appellee cites the opinion of the Commission of Appeals by Justice Powell, in the case of Employers' Indemnity Corporation v. Woods, 243 S.W. 1085, 1086. That was a suit by an employee against an insurer under the Workmen's Compensation Act. The defendant pleaded a judgment rendered in the justice court awarding to the plaintiff the sum of $150 in full settlement. The justice court judgment was upon a compromise agreement between the parties, but which was made "subject to the approval of the Industrial Accident Board." The Accident Board refused to recognize the judgment of the justice court, on the ground that it had never approved the lump sum settlement in question; and upon a hearing of the claim presented to it after the justice court judgment had been paid off and satisfied, awarded to Woods compensation in the sum of $9 per week for a period of 200 weeks. In the opinion of the Commission of Appeals, this is said: "The controlling question upon this appeal is whether or not the justice court judgment aforesaid is res adjudicata of this controversy, and therefore a bar to the award of the Accident Board. Before it can became such a bar, the justice court must have had jurisdiction of this controversy when it rendered its judgment."

The court then quotes several sections of the Workmen's Compensation Act, including section 14 of part 1 (article 5246-32, now article 8306, § 14) as follows: "No agreement by any employe to waive his rights to compensation under this act shall be valid."

Also section 15 of part 1 (article 5246-33, now article 8306, § 15) as follows: "In cases where death or total permanent incapacity results from an injury, the liability of the association may be redeemed by payment of a lump sum by agreement of the parties thereto, subject to the approval of the Industrial Accident Board hereinafter created. This section shall be construed as excluding any other character of lump sum settlement save and except as herein specified: Provided, however, that in special cases where in the judgment of the board manifest hardship and injustice would otherwise result, the board may compel the association in the cases provided for in this section to redeem their liability by payment of a lump sum as may be determined by the board."

And then said: "It is too clear for argument, it seems to us, that the courts of our state have no jurisdiction to pass upon lump sum settlements, except by way of appeal from the decision of the Accident Board. These settlements must first be submitted to that board. After it has made its order, an appeal to the courts can be taken by either of the interested parties."

In the opinion it is pointed out that the Workmen's Compensation Act of 1913 (Acts 1913, c. 179), did not prohibit the parties from making agreed settlements independently of the Accident Board, as held by the Texarkana Court of Civil Appeals in the case of Jenkins v. Texas Employers' Insurance Association, 211 S.W. 349, and in which a writ of error was denied by the Supreme Court; but that the Workmen's Compensation Act of 1917 (Acts 1917, c. 103), amendatory of the former act, required that such agreed settlement must be within the terms and provisions of the act, and according to which a lump sum settlement could not be enforced without the approval of the Accident Board. It is also pointed out that in the later case of Georgia Casualty Co. v. Ward, 220 S. W. 380, the Texarkana Court of Civil Appeals give effect to that change in the act. The settlement so made with Ward was for the sum of $150 and the court said: "If this settlement had been binding, the result would have been that he would probably have speedily become a public charge, when the small payment had been improvidently spent. The public has a right to protect itself from the speedy return of such people to a position where they are likely to become charges upon public charity. In other words, the claimant and insurance company cannot, just among themselves, deprive the Accident Board of the jurisdiction conferred upon it by the Legislature, and thereby ignore the rights of the public generally."

Several other decisions are to the same effect, such as: Indemnity Ins. Co. v. Jones (Tex.Civ.App.) 299 S.W. 674; Indemnity Ins. Co. v. Murphy (Tex.Civ. App.) 53 S.W.(2d) 503; Petroleum Casualty Co. v. Lewis (Tex.Civ.App.) 63 S.W. (2d) 1066; United States Fidelity & Guaranty Co. v. McCollum (Tex.Civ.App.) 70 S.W.(2d) 751; Casualty Reciprocal Exchange v. Dawson (Tex.Civ.App.) 81 S. W.(2d) 284; Oilmen's Reciprocal Ass'n v. Franklin, 116 Tex. 59, 286 S.W. 195; Anderson-Berney Realty Co. v. Soria, 123 Tex. 100, 67 S.W.(2d) 222.

This is a common-law action, and the contract sued on must be construed in accordance with common-law principles.

We quote the following from 10 Tex. Jur., § 107, p. 185: "A contract cannot impair the validity or force of any law, nor control or limit the provisions of a statute. As a general rule, therefore, a contract made in violation of the constitution, or of an express statute, or of an ordinance, or the performance of which will result in such violation, is void and unenforceable, without regard to the question of moral turpitude, and whether the parties knew the law or not. And the same is true of provisions in a contract which are contrary to the mandatory provisions of a statute, or of the constitution, and which do not have the effect of invalidating the whole contract."

An announcement to the same effect is to be found in 6 R.C.L., § 98, p. 692, followed by this statement in section 99, p. 693: "Frequently the illegality is found in the consideration, for not only will an illegal consideration not support a contract, but a contract founded on such a consideration is itself illegal. Usually the element that destroys the validity of a contract is the purpose of the parties to accomplish or to aid an unlawful object."

260

"A contract in furtherance of an illegal agreement is invalid. A contract is invalid if it is so connected with the illegal or immoral purpose as to be inseparable from it." 6 R.C.L., § 104, p. 698.

"Perhaps the plainest example of an illegal contract is one which violates the provisions of a statute. Clearly the courts cannot recognize as valid a contract founded upon an act which is absolutely forbidden by the law-making department of the government." 6 R.C.L., § 105, p. 699.

"A party to an illegal contract cannot, either at the time of the execution of the contract or afterward, waive his right to set.up the defense of illegality in any action thereon by the other party. 13 C.J., § 451, p. 506.

"An agreement void as against public policy cannot be rendered valid by invoking the doctrine of estoppel." 13 C.J., § 453, p. 506.

"The fact that the party seeking to enforce executory provisions of an illegal contract, although they consist only of promises to pay money, has performed the contract on his part, and that unless the other party is compelled to perform he will derive a benefit therefrom will not induce the court to enforce such provisions." 13 C.J., § 456, p. 507.

In Davis v. Sittig, 65 Tex. 497, this is said:

" 'The proposition is universal that no action arises, in equity or at law, from an illegal contract; no suit can be maintained for its specific performance, or to recover the property agreed to be sold or delivered, or the money agreed to be paid, or damages for its violation.' Pomeroy Eq., 940.

"As between the parties to such a contract, who are in equal fault, no right exists which a court of justice will enforce.

" 'If the contract has been voluntarily executed and performed, a court of equity will not, in the absence of controlling motives of public policy to the contrary, grant its aid by decreeing a recovery back of the money paid or the property delivered, or a cancellation of the conveyance or transfer. As long as the contract is executory, it cannot be enforced in any kind of an action brought directly upon it. The illegality constitutes an absolute defense.' Pomeroy Eq., 940.

"And this is so for reasons of public policy, and not from regard for the interest of either party to such a contract.

That the contract may have been executed by one party, furnishes no reason why the other should be compelled to execute his part of it yet remaining executory." (Citing cases.)

The following is quoted from the syllabus of the decision in Central Transportation Co. v. Pullman Palace Car Co., 139 U.S. 24, 55, 11 S.Ct. 478, 35 L.Ed. 56: "A contract of a corporation which is beyond the powers conferred upon it by the Legislature is not voidable only, but wholly void; it cannot be ratified by either party; no performance on either side can give the unlawful contract any validity, or be the foundation of any right of action upon it."

Many other decisions cited in the footnotes support the text of Corpus Juris, copied above.

We conclude that since the agreement of plaintiff not to file with the Accident Board his claim for compensation for the injuries he had sustained was prohibited and rendered void by provisions of the Workmen's Compensation Law, the defendant's contract to give · him employment for life was likewise unenforceable, because based on that agreement of plaintiff, as its consideration, without the necessity of determining the merits of appellee's further contention that the contract was unenforceable because violative of general public policy, independently of the prohibitive provisions of the Workmen's Compensation Law.

The judgment of the trial court is affirmed.