## FEDERAL UNDERWRITERS EXCHANGE v. COKER.

### No. 13739.

Court of Civil Appeals of Texas. Fort Worth.

April 8, 1938.

Rehearing Denied May 20, 1938.

Saunders & Williams and Touchstone, Wight, Gormley & Price, all of Dallas, for plaintiff in error.

O. E. Nelson and John Q. Humphrey, both of Wichita Falls, for defendant in error.

SPEER, Justice.

Plaintiff in error, Federal Underwriters Exchange, sued defendant in error, P. Coker, in the district court of Archer county, Tex., to set aside an award of the Industrial Accident Board, fixing compensation to Coker, and the latter filed a cross-action for compensation on account of an injury sustained, which had been duly presented to the Accident Board. When the testimony was all in and before the charge to the jury was read, plaintiff in error took a nonsuit.

The cause was tried to a jury on special issues, and upon the verdict rendered, judgment was entered for defendant in error, from which this appeal was perfected.

The case as presented to us is as if trial was had on the cross-action, and therefore it is more convenient to refer to P. Coker as plaintiff, and to the Federal Underwriters Exchange, the insurance carrier, as defendant, and the parties will be thus designated.

Because of the nonsuit taken by the insurance carrier, who was plaintiff in the original action, it becomes unnecessary to refer to its petition, but it may be said that the judgment of the court shows that the issues had been prepared by the court when the order was entered, and for this reason some issues were submitted which could well have been omitted, yet we do not consider they or their answers affect the judgment rendered.

The employee, who was defendant in the original suit, and who filed cross-action, and became plaintiff, for all purposes after the nonsuit was entered, and whom, as stated, we are designating plaintiff, pleaded all jurisdictional matters; a contract of employment by H. H. Fraser and an accidental injury resulting in the loss of four fingers, while in the discharge of his employment. The trial was begun on March 19th, 1936, and on that day the defendant (carrier) filed an answer to the cross-action in which it was specially pleaded that the policy of insurance was issued to H. H. Fraser, and that at the time plaintiff received his injuries, he was not an employee of the said Fraser, but was in the employ of a partnership composed of H. H. Fraser and George Proctor, and was not covered by the policy; it specially denied that at the time of the accident it knew of the partnership relation existing between Fraser and Proctor. On the same day plaintiff (the employee) filed a trial amendment, alleging that defendant had waived and was then estopped to deny liability to plaintiff, ·for that after it had been notified of the accident and its result, the employer made two pay-roll reports to defendant, as he was obligated to do, showing the nature of the work being done by him on the lease owned jointly by himself and Proctor, and with full knowledge of all the facts defendant had demanded and received the premiums due on the policy of insurance, thereby expressly and impliedly obligating itself ·to compensate the employees on said lease, under the existing conditions. That by its acts and conduct defendant had waived and was now estopped to deny liability to plaintiff for the injuries sustained at the time and under the conditions existing, all of which were well known to it at the time it demanded and received payment of premiums on the policy.

The record before us discloses that prior to the time of the accident, Fraser and Proctor owned an oil lease in Archer county, as well also a rotary drilling machine; they

were both desirous of developing the lease by drilling thereon; Fraser was an experienced driller and Proctor was not; to accomplish this development, they agreed orally between themselves that Fraser would make a location on the lease, and with the jointly owned machine would drill a well; employ all labor, carry compensation insurance, pay all bills, and render account of expenses thus incurred, to Proctor, who in turn would reimburse him for one-half of all moneys so expended. Plaintiff was employed and paid by Fraser. He was injured while in the course of his employment. It was shown that by the terms of plaintiff's employment he was to work on twelve-hour shifts, seven days in the week; he was injured on Sunday. A Mr. Nutt was employed by defendant to investigate the accident. During the investigation Mr. Nutt was told by both Fraser and Proctor all details of their relationship in regard to ownership of the lease and the machinery, as well as the contract between them for Fraser to drill the well; Nutt reported these facts to defendant; after receiving this information, the defendant requested and received premiums on the policy running in the name of Fraser. Fraser, Proctor, and plaintiff all testified plaintiff was employed by Fraser and was working for him when the accident occurred; the jury found this as a fact, and that plaintiff was not employed by nor working for Fraser and Proctor at the time he was injured; in answer to issues also found that the last-named two parties were engaged in a joint adventure, and that the drilling of the well was not a partnership enterprise between them.

There is no material conflict in the testimony, and the principle points involved on this appeal go to the effect of the testimony in establishing plaintiff's right to recover on the policy issued to Fraser.

Defendant has brought forward 49 assignments of error upon which it has presented 26 points or propositions relied upon; many of these propositions, however, are dependent upon 2 controlling issues, both of which are properly before us; they being (1) because plaintiff's contract was one for services to be performed on Sunday, in the absence of an allegation by him that the work to be performed was one of necessity, and not in violation of the Penal Code, his contract was void and no liability attached under the policy; (2) since the testimony showed that as a matter of law Fraser and Proctor were

engaged in a joint adventure, and that Fraser was not an independent contractor, plaintiff was in fact in the employ of the joint adventurers and not of Fraser alone, therefore the injuries of plaintiff were not covered by the policy. As we view the record, all of defendant's assignments, except one, may be disposed of under the two heads named. The exception being one complaining of argument by counsel for plaintiff, this one we will mention later.

A close study of this voluminous record, and the helpful briefs of the parties, persuade us that the cause should not be reversed for another trial, and we shall give our reasons for the conclusion reached.

■ As is contended by defendant, there were no allegations made that the labor contracted by plaintiff to be performed was such as is excepted by article 284, Penal Code of 1925; but this was not necessary in a case of this kind. There was an allegation of a contract of employment to engage in labor not shown to be prohibited by law. The rule of construction adhered to by the courts of this state is that if a contract under one condition would be valid and under another void, the presumption is in favor of its validity.

■ In Texas Employers' Ins. Ass'n v. Henson, Tex.Civ.App., 31 S.W.2d 669 (reversed by Supreme Court on other grounds than that here involved, 48 S.W. 2d 970), the court had under consideration a contract which required work on Sunday, and whether or not it was such as would support a claim for compensation. The court there said (page 672): "Not all work or labor performed on Sunday is unlawful. 'Works of necessity,' for example, are excepted. P.C. art. 284. There is, therefore, no presumption that a contract is illegal simply because it provides for work on Sundays. On the contrary, the presumption of innocence of law violation obtains. For the contract in question to be shown to be illegal, as a question of law, it was not sufficient merely to show by the uncontroverted evidence that it required work on Sunday, but also a kind of work coming within none of the exceptions making same lawful. No such contention is presented. Maryland Casualty Co. v. Marshall, Tex.Civ.App., 14 S.W.2d 337."

The question before us was considered by the Supreme Court in Casualty Recip-

rocal Exchange v. Stephens, 45 S.W.2d 143; there it was said (page 145):

"Plaintiff in error contends that its general demurrer to the original petition and its request for an instructed verdict should have been sustained, because the terms of employment required Stephens to work seven days in a week, the injury occurred on Sunday, and the petition fails to allege any fact bringing the employment under some exception to the criminal statutes prohibiting labor on the Sabbath.

"The uncontroverted evidence showed that it was necessary for the machinery to be operated every day in the week and to keep the boilers going continuously and have the fireman there to look after the same."

The contention was overruled in that case. In the instant case, the conditions are not unlike those in the Stephens Case, supra; the uncontradicted testimony shows that in the locality where the well was being drilled, the formation was such that in drilling with a rotary machine, work must be continuous; it must not stop for the reason that when the machine is idle the hole will cave; the cavings of rock will fill the hole, and it requires from a few hours to a whole day and night to get the stem back to the bottom of the hole. Clearly, such work was shown to be such as would not infringe the penal statutes.

Defendant relies upon the case of Texas Employers' Ins. Ass'n v. Tabor, Tex. Com.App., 283 S.W. 779, to support its contention that because there was no pleading exempting plaintiff's contract from infringing the penal statutes of this state, he could not prove such exemption by showing the work was necessary for the protection of property. We have carefully studied the holding there made, together with the opinion by the Court of Civil Appeals in the same case, reported in 274 S.W. 309, a goodly portion of which was specifically approved by the Supreme Court, and we think defendant's contention finds no support there. No error of the trial court is shown in these assignments, and they must be overruled.

■ The next group of assignments present the most difficult question in the case. By propositions and assignments of error in many different forms, defendant contends that the policy of insurance issued to H. H. Fraser did not cover accidental injuries sustained by plaintiff; for the reason the facts show that there was a partnership between Fraser and Proctor in the transaction or at least it was a joint adventure between them; in short, whether plaintiff knew it or not, he was working for both Fraser and Proctor, and not for Fraser alone, and therefore there was no coverage for Fraser's employees.

By the terms of the caption to the Workmen's Compensation Act, Vernon's Ann. Civ.St. art. 8306 et seq., as adopted and passed by the Legislature, it is said the purposes were: "To * * * determine in what cases compensation shall be paid, and to make the payment thereof more certain and prompt by the creation of an insurance association to insure and guarantee such payments," etc. By the emergency clause to that act, it was declared that: "The law as it now stands being wholly inadequate to protect the rights of industrial employees who may be injured in industrial accidents and the beneficiaries of such employees who may be killed in such accidents, creates an emergency," etc. Laws 1917, c. 103, p. 293, § 7.

Our courts, in construing the act, have so many times said that its provisions should be construed liberally in favor of the employees, to bring about the ends sought to be accomplished by the Legislature, we deem it unnecessary to cite the cases here. We would be derelict in our duties if we should do otherwise than follow the plain purposes of the act and the precedents that have gone before. Hence, we have no apology to offer for even seeking by the terms of the act the constructions formerly made and the facts before us, to find a legitimate means of enabling an employee to thus receive compensation for an admitted accidental injury, and to compel an insurance carrier to pay for it.

■ Here we have an employee working, as he thought, for Fraser alone, who carried the insurance for the protection of his employees; Fraser thought that the insurance covered this employee, even though Proctor did have an interest in the outcome of the enterprise; he had handled other contracts on a similar basis on several occasions; it is contended that he was an independent contractor with his associate, and he thought he was such; but whether this be true or not, a matter unnecessary for us to determine, to deny the employee of his sure, certain, and

prompt compensation, if and when injured, because of some other man's mistake of fact, would defeat the purposes of the act.

There were no partnership relations between Fraser and Proctor in the transaction involved here; but to ignore the question of independent contractor as above indicated, there was a "joint adventure" between them, as that. term was defined by the court, and as found by the jury under the facts. In so far as this case is concerned, it could make little difference whether Fraser and Proctor were partners or whether they were engaged in a joint adventure; that is to say, operating jointly in this, a single transaction, the relation between them would be the same, as far as plaintiff is concerned, as if they were partners. Finney v. Terrell, Tex.Civ.App., 276 S.W. 340. In cases of joint adventure, it has been held that each joint adventurer has authority to bind his associates by contracts made in furtherance of the joint enterprise. Burton-Lingo Co. v. Federal Glass & Paint Co., Tex.Civ.App., 54 S.W. 2d 170.

■■ However, there is in this case an insurmountable difficulty which precludes defendant's escape from liability. , There were allegations and undisputed testimony, and the jury in answer to special issues found them to be true, that after the issuance of the policy to Fraser, the defendant had full knowledge of the relations existing between Fraser and Proctor, and again, after the accidental injury to plaintiff, it was advised by one appointed by it to learn the facts, the true status of the relation of Fraser to the joint adventure, and did not at any time repudiate the insurance contract with Fraser, but requested and received the premiums due from Fraser. These acts constituted a waiver of those things which would have affected its liability, and estopped it to deny liability to this plaintiff for the injuries sustained. Plaintiff testified, as did Fraser, that he was working for Fraser, and was never in the employ of Fraser and Proctor. They each believed this was true, and technically it was true; yet Fraser being engaged in the joint adventure with Proctor enabled him to make contracts, such as the one with plaintiff, binding on all interested in the adventure. The acts of the insurance carrier, above mentioned, with full knowledge of all the facts, were equivalent to its issuance of the policy of insurance in the first instance to Fraser and all those interested with him.

Defendant cites and relies upon the case of New Amsterdam Casualty Co. v. Harrington, Tex.Com.App., 290 S.W. 726, in which case that court held that a carrier of compensation insurance, under a policy issued to Dr. Gragg, was not liable for injuries sustained by one employed by Gragg to work for a copartnership, and reversed the case for another trial. However, upon a subsequent trial of that case, under allegations that with full knowledge by the carrier of those constituting the copartnership, and the issuance of the policy to Dr. Gragg for convenience of all, claimant again recovered and the case was appealed to this court; the judgment was affirmed (11 S.W.2d 533), and writ of error was denied. We think the plea of waiver and estoppel and the uncontroverted testimony in the instant case bring us well within the second trial and appeal of the Harrington Case, supra. This court had occasion to discuss the holdings in the Harrington Case, as applicable to some phases of this case, in Southern Underwriters v. Shipman, Tex.Civ.App., 97 S.W.2d 370, writ denied, and what we said there is applicable here. We must therefore overrule the assignments of error raising the question.

■ Defendant's sixth assignment of error goes to the argument of plaintiff's counsel. It is claimed that counsel informed the jury the legal effect of its answer to special issue No. 24, which was an inquiry as to whether or not there was a partnership between Fraser and Proctor. We have read the entire bill of exception containing the argument complained of, and do not think it subject to the criticism offered.

The bill shows much of the argument useful only to show that part to which the objection is made; counsel summed up the case as he viewed the facts, showing the issuance of the policy to Fraser, the payment of the premiums, its receipt by defendant, its knowledge of the facts acquired prior to the demand and receipt of the premiums, its retention of premiums after having knowledge of all the facts; he gave many of the details of employment by Fraser; he argued that the attitude of the defendant was, it would take the profits in premiums but would not cover the losses sustained by the employee; counsel referred to the fact that Proctor

was a joint owner in the lease and machinery and concluded by saying: "But that doesn't make him a partner, but that is what the insurance company wants to say here in order that they won't have to pay anything." It is contended that the portion of the argument quoted, apprised the jury of the legal effect of its answer to the issue. The record is full of defendant's pleadings, and cross-examination of witnesses tending to show that the relationship between Fraser and Proctor was one of partnership. A juror could not help but know defendant sought to establish that as a fact, and the argument did no more than to tell the jury that this was what defendant was endeavoring to do. It has often been held that it is not a violation of the rule in such cases to tell a jury what it already knows. Galbraith-Foxworth Lumber Co. v. Gerneth, Tex.Civ.App., 66 S.W.2d 471, writ denied; Continental Oil Co. v. Barnes, Tex.Civ.App., 97 S.W.2d 494, writ refused.

Then, too, it may be said further in this connection, that under the undisputed testimony in the case, the issue of whether there was a partnership between these parties should never have been submitted to the jury. As a matter of fact, as well as of law, none was shown, and even when submitted, if it had been answered in the affirmative, the court could have properly disregarded it and rendered judgment as he did. The case cited and relied upon by defendant is Fidelity Union Casualty Co. v. Cary, Tex.Com.App., 25 S.W.2d 302. A reading of that opinion will clearly show its distinguishing features from the one before us. There is no merit in the point raised.

Other assignments of error are based upon the claim that no competent testimony was before the court to support certain issues submitted; such as the knowledge of defendant as to the real relation between Fraser and Proctor based upon the facts as they existed. This is because it is claimed the court should not have required Mr. Nutt to disclose what he had communicated to defendant prior to the time it demanded, received, and retained the premium payments on the policy. It is undisputed that defendant employed Mr. Nutt, who is a practicing attorney, to investigate the facts connected with the claim of plaintiff. There is no question but that Mr. Nutt acquired all the information long prior to the time the premiums were paid. The information ac-

quired by Mr. Nutt in making the investigation at the instance of defendant was imputable to defendant, whether he ever communicated it to his principal or not. The law presumes he did so. There could be no harmful error committed by the court in permitting the introduction of testimony to prove a fact which, in law, the defendant must have known. No error is shown by this complaint.

We have studied other assignments complaining of the actions of the trial court in entering judgment, because of conflicting answers to issues, and in view of what we have said above concerning the controlling questions in the case, we shall not discuss them in detail. We see no merit in any of them, and they are therefore overruled.

For the reasons herein expressed, the judgment of the trial court is affirmed.