W. N. WOOLSEY v. PANHANDLE REFINING COMPANY.

No. 7188. Decided May 11, 1938.
(116 S. W., 2d Series, 675.)

450

*Kearby Peery* and *Phillip S. Kouri,* of Wichita Falls, for plaintiff in error.

The statutory provision that "no agreement by any employee to waive his rights to compensation under this law shall be valid," pertains solely to agreements, entered into prior to the time the injury is received, and an employee who receives an injury may thereafter waive his claim to compensation if he so desires, without contravening the statute or the public policy of the State. Sherrill v. Union Lbr. Co., 207 S. W. 149; Commercial Casualty Co. v. Hilton, 126 Texas 497, 87 S. W. (2d) 1081.

*R. C. Stanford* and *A. H. Britain,* both of Wichita Falls, for defendant in error.

Cited cases used in opinion.

*John W. Craig,* of Dallas, filed written argument as amicus curiae.

MR. JUSTICE SHARP delivered the opinion of the Court.

The principal question presented here is whether an employer and an employee can make a valid contract obligating the employer to furnish lifetime employment to the employee, which contract is in violation of the Workmen's Compensation Law. Article 8306 et seq., Vernon's Annotated Texas Civil Statutes.

W. N. Woolsey filed suit against the Panhandle Refining Company, alleging that the Company carried compensation insurance; that he was injured and made a contract with the Company to the effect that if no claim were filed with the Industrial Accident Board, he would be employed for life; that he did not file such claim, and continued to work for the Company to May 20, 1935, when he was discharged. The district court sustained a general demurrer to his petition. The case was appealed to the Court of Civil Appeals at Fort Worth, and the judgment of the trial court was affirmed. 97 S. W. (2d) 257.

The parties will be designated here as they were in the trial court.

Plaintiff in substance contends: (1) That the opinion of the Court of Civil Appeals in this case is in conflict with the opinion of the Court of Civil Appeals at Dallas in the case of Duff v. Ford Motor Co., 91 S. W. (2d) 871; (2) that the Court of Civil Appeals erred in holding that plaintiff's petition was subject to general demurrer on the ground that it violated Article 8306 of the Workmen's Compensation Law; (3) that the Court of Civil Appeals erred in upholding the action of the trial court in sustaining the general demurrer to its petition, on the theory that the contract had to be approved by the Industrial Accident Board before it became valid, because this was a common law case, based on a contract between an employer and an employee, and was not a settlement between the insurance company and the employee. On the other hand, defendant contends that the alleged contract for lifetime employment, in consideration of the employee's not filing his claim with the Industrial Accident Board, nullified the Workmen's Compensation Law as to his claim, and that such contract was, and is, against public policy, and is, therefore, void; and, furthermore, that the insurer, which was solely liable for the payment of compensation, could not have made any such agreement of settlement, and that the defendant, who had no liability for such compensation, could not make a contract of settlement, the sole consideration being for the benefit of the insurer, and that the alleged consideration

for such contract is illegal and in violation of the Workmen's Compensation Law, and is contrary to public policy.

The controlling facts alleged in plaintiff's petition are brief, and are as follows: Plaintiff alleged that he was employed by the defendant on September 1, 1926, when he was injured, which entitled him to compensation; that the defendant carried compensation insurance; that he informed the defendant of his injuries, and requested the defendant to file a claim for him before the Industrial Accident Board; that the general superintendent of the defendant told him that their compensation rates were exceedingly high, and if his claim were filed the rates would be raised considerably higher; that if the plaintiff would not file his claim for compensation, the defendant would employ him for life at his then current salary of $150 per month; that, relying upon such offer, and in acceptance thereof, he did not file his claim; that the defendant complied with its contract for a period of seven years, but that on May 20, 1935, the plaintiff was discharged without just cause. Plaintiff prayed for judgment for the amount of his losses by reason of the discharge.

We shall notice first the contention that the opinion of the Court of Civil Appeals in this case is in conflict with the opinion in the case of Duff v. Ford Motor Co., 91 S. W. (2d) 871.

The Court of Civil Appeals in this case, in an able opinion written by Chief Justice DUNKLIN, recognizes that the facts in the two cases are similar, and after quoting from the opinion in the Duff Case used the following language: "By counter proposition appellee presents the contention that plaintiff's agreement not to file his claim with the Industrial Accident Board for compensation was forbidden by the Workmen's Compensation Act, and, being illegal, it could not be a sufficient consideration for the alleged contract of the defendant upon which a recovery was sought. Apparently, that point was not discussed in the opinion in the Duff Case, and it may be assumed that the same objection was not urged in that case, either in the trial court or in the Court of Appeals. And it does not appear that a writ of error was ever applied for in the Supreme Court."

We shall brush aside the question raised by Chief Justice DUNKLIN as to the contention not being presented in the Duff Case, and shall consider the question as if it had been presented. We have carefully considered the opinion rendered in the Duff Case and the decisions cited in support thereof. The decisions cited do not involve the construction of the Workmen's Compensation Law. Since we shall later discuss the provisions of the law and its construction by the courts, we simply say that the

opinion of the Court of Civil Appeals at Fort Worth in this case correctly construed the law as applicable to the contract in controversy.

1 Workmen's compensation laws have become part of our public policy. The object of the laws was to do away with the issues of negligence, unavoidable accident, assumed risk, contributory negligence, and other like issues, and to fix the amount recoverable free of any uncertainty. The old system of settling disputes was unsatisfactory, and modern business methods demanded that compensation for injuries to employees be not controlled by the fault or negligence of the employee, but should rest upon broader, more humane, and more certain rules. To meet the demand for a change in the settlements for injuries received in the course of employment, the Legislature of this State enacted our present Workmen's Compensation Law. The public policy of this State relating to settlements for injuries is now expressed in that law.

The law is comprehensive in its terms, and prescribes in detail how employers of labor may, at their election, become subscribers. (Article 8308, Sections 7, 18a, 19, and 20.) It also provides that the employee may elect not to accept employment under the terms of the law. (Article 8306, Sections 3a and 3b.) It also defines what issues shall not be a defense to an action to recover damages for personal injuries sustained by an employee in the course of his employment. (Article 8306, Section 1, subdivisions 1, 2, 3, and 4.) The law also provides an exclusive remedy for those who adopt the benefits contained in said law. (Article 8306, Section 3.)

Section 3 of Article 8306 reads as follows: "The employees of a subscriber and the parents of minor employees shall have no right of action against their employer or against any agent, servant or employee of said employer for damages for personal injuries, and the representatives and beneficiaries of deceased employees shall have no right of action against such subscribing employer or his agent, servant or employee for damages for injuries resulting in death, but such employees and their representatives and beneficiaries shall look for compensation solely to the association, as the same is hereinafter provided for."

Section 15 of Article 8306 reads: "In cases where death or total permanent incapacity results from an injury, the liability of the association may be redeemed by payment of a lump sum by agreement of the parties thereto, subject to the approval of the Industrial Accident Board. *This section shall be construed as excluding any other character of lump sum settlement except*

*as herein specified.* In special cases where in the judgment of the board manifest hardship and injustice would otherwise result, the board may compel the association in the cases provided for in this section to redeem their liability by payment of a lump sum as may be determined by the board." (Emphasis ours.)

The Workmen's Compensation Act of 1913 (Acts 1913, c. 179) did not prohibit parties from making settlements independently of the Industrial Accident Board. In 1917 the act was amended, and now the law requires that an agreed settlement must be within the terms of the act, and that a lump sum settlement cannot be enforced without the approval of the Industrial Accident Board.

Section 14 of Article 8306 reads: "No agreement by any employee to waive his rights to compensation under this law shall be valid."

When an employee remains in the service of an employer who becomes a subscriber under the terms of the law, both agree that certain rights existing under the common law shall cease to exist, and that the provisions of the Workmen's Compensation Law shall govern their rights and dealings. The statute itself fixes the liability and rights of the insurer, and prescribes the remedies for their enforcement. It is quite plain that the law has materially changed the rights of the employee, the employer, and the insurer, and has furnished remedies for the protection and enforcement of such rights.

The Legislature has clearly announced the terms under which a settlement can be legally made. It has fixed the compensation to be paid the employee, and it has also provided that such employee cannot waive the rights fixed for him under the law. To further protect the employee and make certain that the law shall be complied with, the Industrial Accident Board was created, and provision was made that all lump sum settlements must be approved by that tribunal.

The case of Employers' Indemnity Corporation v. Woods, 243 S. W. 1085, involved the construction of this law. The history and purposes of the law were ably reviewed by Judge POWELL, and in the course of the opinion he discussed the power of the parties to make agreed settlements independently of the law, and the wisdom of prohibiting such agreed settlements, and expressed the conclusion of the court in the following language: "The Accident Board alone can protect the public interest and in a large measure save these claimants from themselves. Many of them do not need this protection. If so, the supervision of

the Accident Board, at least, does no harm. To those who do need it, this supervision is exceedingly valuable."

For a further discussion of the provisions of this law by the courts of this State the following cases are cited: Oilmen's Reciprocal Assn. v. Franklin, 116 Texas 59, 286 S. W. 195; Anderson-Berney Realty Co. v. Soria, 123 Texas 100, 67 S. W. (2d) 222; Indemnity Ins. Co. v. Jones, (Tex. Civ. App.) 299 S. W. 674; Indemnity Ins. Co. v. Murphy, (Tex. Civ. App.) 53 S. W. (2d) 503; Petroleum Casualty Co. v. Lewis, (Tex. Civ. App.) 63 S. W. (2d) 1066; United States Fidelity & Guaranty Co. v. McCollum, (Tex. Civ. App.) 70 S. W. (2d) 751; Casualty Reciprocal Exchange v. Dawson, (Tex. Civ. App.) 81 S. W. (2d) 284; see also 45 Tex. Jur., p. 375, Sec. 13, and cases cited.

This brings us to a consideration of the contention urged that this is a common law action, based on a contract between the employee and the employer, and was not a settlement between the insurer and the employee, as was contemplated by the Workmen's Compensation Law.

2    The great weight of authority supports the general rule that an agreement which violates a valid statute is illegal and void, and cannot be enforced. 10 Tex. Jur., p. 185, Sec. 107, and cases cited; 6 R. C. L., p. 692, Sec. 98, and cases cited; 12 Am. Jur., p. 652, Sec. 158, and cases cited; 13 C. J., p. 410, and cases cited.

The foregoing rule rests upon sound reason, and has existed too long to be questioned now. The courts in certain instances have drawn distinctions which remove a contract from such rule. See 10 Tex. Jur., p. 238, Sec. 137; 13 C. J., p. 497, Sec. 441 et seq.; 12 Am. Jur., p. 718, Sec. 211 et seq. But the facts of this case do not bring it under any of the exceptions made. Therefore we shall not discuss any of those exceptions.

3    If an employee and an employer can make a contract for a settlement, as was done in this case, then the wise provisions of the law would be futile. The law was enacted principally to protect the employee, and to assure him, without delay or expense, a fixed sum as compensation for injuries. The law requires that an employer shall carry compensation insurance for the benefit of his employees, or waive certain rights and defenses. The Legislature did not leave the employee unaided in making a settlement with his employer and insurer, but provided that he should have the advice and assistance of the Industrial Accident Board. It was declared in the law that before a settlement could be made final, it had to receive the sanction of the board. To further protect the employee in his rights, it was provided that under the law he could not waive same. In

this instance plaintiff knew that his employer carried compensation insurance at the time he made the contract. He was presumed to know the law that had been enacted for his benefit, and to know that it required the approval of the Industrial Accident Board to any contract of settlement he might desire to make. It is regrettable that he waived his rights under the law. However, it is the duty of courts to construe laws as enacted, and to carry out the intention of the Legislature as expressed in such laws.

4 It may be true that by refusing to enforce this contract injury may result to plaintiff. However, refusing to enforce the agreement of settlement involved here will be far less disastrous to the great army of employees operating under this statute than to hold that under the law an employee and an employer can contract away the rights of the employee. In line with the universally accepted rule, this Court has repeatedly refused to enforce contracts which are either expressly or impliedly prohibited by statutes or by public policy. James v. Fulcrod, 5 Texas 512, 55 Am. Dec. 743; Hennessy v. Automobile Owners' Ins. Assn., 282 S. W. 791, 46 A. L. R. 521; Gorman v. Gause, 56 S. W. (2d) 855; Davis v. Sittig, 65 Texas 497; Queen Ins. Co. v. State, 86 Texas 250, 24 S. W. 397, 22 L. R. A. 483; Hall v. Edwards, (Com. App.) 222 S. W. 167; Seeligson v. Lewis & Williams, 65 Texas 215, 57 Am. Rep. 593; 10 Tex. Jur., p. 183, Sec. 107.

Associate Justice STAYTON in Davis v. Sittig, supra, after discussing the rule controlling the construction of illegal contracts, quoted as follows from Pomeroy on Equity, p. 940: "If the contract has been voluntarily executed and performed, a court of equity will not, in the absence of controlling motives of public policy to the contrary, grant its aid by decreeing a recovery back of the money paid or the property delivered, or a cancellation of the conveyance or transfer. As long as the contract is executory, it cannot be enforced in any kind of an action brought directly upon it. The illegality constitutes an absolute defense." And then Associate Justice STAYTON added: "And this is so for reasons of public policy, and not from regard for the interest of either party to such a contract."

In Queen Insurance Co. v. State, supra, Associate Justice GAINES, in a very exhaustive and elaborate opinion, discussed this rule, and said: "The rule is to leave the parties as they have left themselves. If the contract be executory, a court will not enforce it in favor of one claiming under it; if executed, it will not rescind it at the suit of a party claiming against it. The

public policy which creates the rule in these cases, it seems to us, has gone no further in providing a sanction for its enforcement than to refuse a remedy in the courts to either party to the agreement."

It follows from what has been said that plaintiff did not state a cause of action in his petition, and the trial court correctly sustained the general demurrer to same.

Therefore the judgments of the trial court and of the Court of Civil Appeals are affirmed.

Opinion delivered May 11, 1938.