## TEXAS EMPLOYERS' INS. ASS'N v. PEPPERS.

No. 10939.

Court of Civil Appeals of Texas. Galveston.
Oct. 26, 1939.

Rehearing Denied Nov. 16, 1939.

Royston & Rayzor, of Galveston (M. L. Cook, of Galveston, of counsel), for plaintiff in error.

Thornton & Markwell, of Galveston, for defendant in error.

CODY, Justice.

This is a workman's compensation case, and as such, advanced on the docket of this court.

The defendant in error is a longshoreman, and was seriously injured while unloading scrap iron from a car at Texas City, and loading same upon a ship, when the electric magnet weighing some two tons, and which was used to lift the scrap iron from the car onto the ship, fell on him. The Industrial Accident Board rendered an award of 200 weeks compensation at the rate of $18.60 per week, less a credit of $399.60 theretofore voluntarily paid defendant in error by plaintiff in error. In due time plaintiff in error filed its suit in the district court of Galveston County to set aside such award, and judgment was there rendered against plaintiff in error, and in favor of defendant in error, upon the answers of the jury to numerous special issues, for compensation at the rate of $20 a week for 401 weeks, payable in a lump sum, less the credit of $399.60.

It is well established that longshore work is irregular, not only with respect to the number of days worked in a year, but also with respect to working for the same employer,—a longshoreman may work for fifteen different employers on fifteen consecutive days. In this case it is admitted that neither defendant in error, nor any other longshoreman, has worked substantially the whole of the year within the meaning and provisions of the Workman's Compensation Law, Vernon's Ann.Civ.St. art. 8306 et seq., and no question is made but that defendant in error's average weekly wage must be determined under Section 1, Subdivision 3, Art. 8309, R.S.1925, which reads:

"When by reason of the shortness of the time of the employment of the employé, or other employés engaged in the same class of work in the manner and for the length of time specified in the above subsections 1 and 2, or other good and sufficient reasons it is impracticable to compute the average weekly wages as above defined, it shall be computed by the board in any manner which may seem just and fair to both parties."

Plaintiff in error pled that if defendant in error is entitled to any compensation that

such compensation should be based on an average weekly wage of $18 per week, as defendant in error was bound by the terms of the contract existing between the international Longshoremen's Association and the members of the Maritime Committee of the Galveston Cotton Exchange and Board of Trade, and the Master Stevedores Association of Texas, and others, which contract governed the rules, rates of pay, and working conditions of longshoremen; that among other things the contract contained the following provision, being Section 15 of such contract:

"It is mutually agreed by all of the parties signatory to this contract that for the purposes of computing and ascertaining the average weekly wages of longshoremen covered by this contract, when such longshoremen are claiming compensation under the Workmen's Compensation Laws of the State of Texas, or of the Longshoremen and Harbor Workers Act of the United States Congress, that average weekly wage shall be eighteen dollars ($18.00)."

And plaintiff in error pled that defendant in error was bound by such Section 15 of the contract, and therefore was precluded from proving that his compensation exceeded $18 per week; that such provision was fair and just, and—quoting from plaintiff in error's pleading verbatim—"The persons who negotiated the contract, after due and full consideration of the earnings, work opportunities and all other relevant factors entering into the average weekly wage of longshoremen, and especially Texas City longshoremen, and having found and being of the opinion that an average weekly wage of $18.00 per week would be just ·and fair to the longshoremen who might have claims for compensation, and to the plaintiff herein, secured the consent and approval of plaintiff to agree upon and insert in said contract a definite and certain average weekly wage, and plaintiff agreed to the average weekly wage of $18.00 and that the provision of the contract hereinabove referred to should be incorporated in and made a part of that contract. That each and every claim for compensation which was presented to plaintiff by longshoremen subject to the agreement referred to was paid and allowed on the basis of the agreed average weekly wage of $18.00 per week; that said rate was and is fair and just to defendant herein; that the average weekly wage of $18.00 is fair and just to defendant for the further reason that he accepted all of the other benefits of the Longshore-

men's Contract and by continuing to work thereunder he ratified, approved and acquiesced in said rate in addition to having been bound by the Longshoremen's Contract as a member of the I. L. A. Local No. 636; that any average weekly wage above $18.00 per week would be unfair to plaintiff herein because it has heretofore, at all times, and in all other cases, conducted its business and affairs on the basis that the average weekly wage for longshoremen was the average weekly wage provided for in the longshoremen's agreement, and in handling such claims has never attempted to pay any claimant on any average weekly wage basis other than $18.00, and has never concerned itself with or attempted to lower the average weekly wage in the many instances where, as a matter of fact, the claimant's average weekly wage was less than $18.00; that it would be manifestly unfair and inequitable to plaintiff to permit defendant to claim or recover compensation on an average weekly wage basis other than $18.00; that it would be unfair to plaintiff to permit defendant to avoid, refuse to abide by, or depart from the agreed average wage of $18.00."

The court below, being of the opinion that such Section 15 was illegal, refused to permit plaintiff in error to introduce it into evidence, or to enforce such average weekly wage provision, and plaintiff in error urges numerous assignments of error to such action of the court.

Whatever the object of the quoted paragraph 15 of the aforementioned contract may be, it is perfectly clear that the purpose of plaintiff in error in urging it upon the court is to prevent defendant in error from proving facts which, under the provisions of the Workmen's Compensation Act, would entitle defendant in error to a greater compensation than that based upon the agreement contained in paragraph 15 of the contract.

 Now the Workmen's Compensation Act was enacted principally to protect the employee and to assure him, without delay or expense, the compensation for injuries which the Act provides for. Woolsey v. Panhandle Refining Co., 131 Tex. 449, 116 S.W.2d 675. And any agreement which violates the Act is void; and the courts will not enforce contracts which are either expressly or impliedly prohibited by the Act. Id. See, also, James v. Fulcrod, 5 Tex. 512, 55 Am.Dec. 743; Hennessy v. Automobile Owners' Ins. Ass'n, Tex.Com.

App., 282 S.W. 791, 46 A.L.R. 521,—and the additional authorities cited in Woolsey v. Panhandle Refining Co. It is perfectly clear that, if defendant in error was able to prove he was entitled to recover on the basis of $40 weekly compensation under the provisions of the Act, no act or agreement of his own, nor any made on his behalf by others, to accept compensation on the basis of $18 weekly compensation is legally enforceable. The question before us is not whether, generally speaking, the provisions of paragraph 15 would be just and fair to longshoremen and their employers. We can conceive of cases where such provisions would be just and fair. But in cases where an employee is able to offer proof which would sustain a jury finding that he was entitled to compensation under the Act, based on a weekly wage substantially in excess of $18 per week, it is self-evident that no agreement by an employee, the effect of which would be to limit him to compensation less than that fixed by the Act is enforceable.

Since such an agreement is not directly enforceable against an employee who offers to prove weekly earnings greater than those fixed by agreement, because violative of the Act, it was not error for the court to refuse to permit plaintiff in error to try to enforce it indirectly by estoppel, etc. Hence all of plaintiff in error's assignments of error relating to such agreement are overruled.

Over the objection of plaintiff in error, the defendant in error was permitted to testify that during the year immediately preceding his injury he worked for Foster and Wheeler as a laborer,—pipe-fitter's helper and an electrician's helper, for which services he received 68-½ cents per hour; that he was classified as a laborer while working for Southport Oil & Refining Company; that he worked as a laborer for the Kellog Construction Company, digging foundations, carrying steel, etc.; that he worked for the Pan-American Refining Company. At the time of the injury he was working as a longshoreman for the Texports Stevedore Company at a rate of 85 cents an hour straight time, and $1.37-½ overtime. Regular time consisted of hours worked between 8 A. M. and 5 P. M. Plaintiff in error earnestly insists that claimant's employment and earnings as an electrician's helper, pipe-fitter's helper, and common laborer were inadmissible, while he was injured as a longshoreman, there being no similarity between such work

and longshore work, and that it was reversible error for the court to admit evidence of claimant's earnings and earning capacity with respect to such other work. Plaintiff in error contends that the point here involved was ruled upon and definitely settled in Maryland Casualty Co. v. Drummond, Tex.Civ.App., 114 S.W.2d 356, majority holding on rehearing (writ of error refused), beginning on page 359. Defendant in error concedes that the point was definitely settled by the cited case, but contends that it was settled adversely to plaintiff in error's contention. In the opinion referred to, the court said:

"The decisions of our courts have not laid down any specific rule or guide for determining just what facts may and what may not be considered in determining the just and fair wage rate contemplated by the statute. First subdivision 3, section 1, of article 8309, is general in its provisions and clothes the Industrial Accident Board (or, as here, the court) with broad discretionary powers in considering matters that bear upon the question of a just and fair weekly wage. * * *"

Again the Court said:

"In Texas, as in a number of other states, it has been held that the compensation statute is designed to compensate the injured employee, not for loss of earnings, but for loss of earning capacity. * * *

"So it would seem settled that when the subject of inquiry is a just and fair wage rate under first subdivision 3, evidence of earnings in other employment than that in which the claimant was injured is proper to be considered in determining his wage rate or 'earning capacity.'"

The court then proceeds to discuss what evidence of earning capacity is proper to be considered, and concludes:

"It seems to us that evidence to be 'pertinent' to the ascertainment of the just and fair wage rate contemplated should tend reasonably to establish the capacity of the claimant to earn in the same or similar employment to that in which he was engaged at the time of his injury. * * * We think the compensation statute clearly contemplates that the earning capacity covered by the compensation insurance shall bear a direct relationship to the capacity of the insured to earn wages on the employment in which his injury is received. * * * It manifestly would not be just and fair to permit one who accepts employment and engages voluntarily in the work of a com-

mon laborer, carrying a low rate of pay, to show as a basis for compensation for an injury received in that work that he is a skilled mechanic having the capacity to earn a much higher rate of pay."

■ What we next quote from the opinion is decisive here:

"In considering the matter of fixing just and fair wage another question arises on the record before us, which is, where the injured employee was employed for part time work only is his weekly wage rate to be limited to his capacity to earn in similar part-time employment, or shall it be based on what he could earn by working full time? We think the authorities * * * have settled the proposition that the wage rate is to be based on the employee's capacity to earn when employed on a full-time basis. *The limitation upon the hours of work under the particular contract of employment is no more conclusive in fixing the insured's earning capacity than is the wage rate being received by him.* This might at first seem to be unfair to the insurer, but it is not. *The premium rates are based upon the pay roll and it makes no difference in the total liability assumed by the insurer whether the pay roll is made up of the wages of a hundred men working full time or two hundred men working half time.* In either instance the total premium paid for the policy is based upon the total hours worked by the employees. And so, although twice as many employees are covered on the half-time basis as on the full-time basis, each employee in such group is exposed to injury but half the time of a full-time employee, and the total liability of the insurer is the same." (Emphasis ours).

■ In the case from which we have quoted so extensively, the court held that it was error for the trial court to permit proof of the claimant's earnings as an electrician, as there was no apparent similarity between such work, and that of a steam crane signal man (which the claimant there was), and that the wages of such claimant in the former employment could not have been a pertinent fact tending to establish his weekly wage or "earning capacity" in the latter employment. But the court held such error harmless, because the proof as to the claimant's capacity to earn in the very kind of employment in which he was engaged when injured would have sustained the finding of a much larger wage rate than was fixed by the jury.

Now, as noted above, the wage rate of defendant in error as a longshoreman was greater than his wage rate in the other employments that he testified to. So, if it should be held that it was error for the court to have admitted evidence of such employments, then it would constitute harmless error, so far as the insurer is concerned. And its assignment of error is overruled.

■ We overrule plaintiff in error's various assignments of error to the effect that claimant is precluded from recovering because of Article 283 of the Penal Code, relating to working on Sunday. By the express terms of the succeeding Article, the prohibition does not apply to works of necessity, nor to the running of steamboats or other water crafts, rail cars, common carriers, nor to the delivery of goods by them. The presumption that the conduct of men is lawful placed the burden on plaintiff in error to prove that the work on which claimant was engaged when injured did not come within one of the exceptions referred to, before it could claim that claimant was acting in violation of law. But we are unable to concur in what we take to be plaintiff in error's views, that violation of the law against working on Sunday would result in making defendant in error an outlaw, and would leave him without all legal remedy for injuries then done to him. The law itself contemplates that a violator shall be made to suffer by a fine of not less than ten, and not *more* than fifty dollars. Could it be seriously claimed that if a wrongdoer should injure a fellow-man on Sunday under circumstances which, had such injury been inflicted on Monday, would have entitled the injured man to recover $25,000 in damages, that the wrongdoer has a perfect defense to a suit for damages? Or suppose a man whose life was insured for $50,000 should be hunting on Sunday so as to subject himself to a $10 fine, and he were accidently killed, would the law give the insurance money back to the insurer, and in effect fine the deceased $50,000. The point we are making is, that violation of the law against working on Sunday could in no event release the insurer from his duty to compensate the insured for injuries received in the course of his employment on Sunday, unless the insurer could show that such injury was the direct result of violating the statute. In the instant case, unless the insurance carrier had shown that claimant was injured as a proximate

result of working on Sunday, that is, because it was Sunday and not a week day, we fail to see that it could be any concern of plaintiff in error, or could relieve it from liability. The prohibition against working on Sunday, where it applies, seems to be absolute. It might well happen that one working on Sunday would think his labor a work of necessity, whereas a jury might reach a different conclusion. A man ought not to have his right of compensation for injuries received on Sunday left thus to a difference of opinion unless the violation of such law did, in and of itself, as such, proximately cause the injuries. It was never intended or contemplated that the statute should deprive a man of the right to recover damages for injuries received while working on Sunday, unless they were caused as the direct result of violating the statute, and not simply suffered while violating the statute. The following cases are cited, not as supporting our reasoning, but as justifying our ruling. Federal Underwriters Exchange v. Coker, Tex.Civ.App., 116 S. W.2d 922; Maryland Casualty Co. v. Marshall, Tex.Civ.App., 14 S.W.2d 337.

█ It would unduly extend the length of this opinion to quote the substance of the evidence which sustains the finding of claimant's total permanent disability. We have examined the evidence which bears on the issue, and believe that it is sufficient. The rule is that if an injury to a specific member does not stop with the injury to or loss of that member, but for any reason continues as an injury affecting the body to such an extent as to result in permanent or partial disability, a recovery may be had therefor, even exceeding the statutory compensation for the complete loss of that member. In such a case, the injury is general and not confined to the specific member. Standard Accident Insurance Company v. Williams, Tex.Com.App., 14 S.W.2d 1015.

Plaintiff in error contends that the court forced it to trial on defendant's cross-action, after it had filed suit as plaintiff, though it made no appearance subsequent to filing its original petition, and there was no service or waiver of process on the cross-action. The suit was filed by plaintiff in error on July 19, 1938, and was an appearance case for October 3, 1938. On September 17, 1938, defendant in error furnished its attorneys with a copy of their answer and cross-action, which was filed on September 21, 1938. The case was set down for trial on October 17, 1938, on appearance day, at which time plaintiff in error was present in court, but such attorney stated to the court that there had been no service on the cross-action, and objected to the court's taking jurisdiction over the cross-action because no service had been had thereon, and no appearance had been made, and expressly stated that the sole purpose in making appearance was to call attention to the fact that no jurisdiction was in the court over plaintiff in error with respect to the cross-action. On October 17, the court called the case for trial, and plaintiff in error went to trial, apparently reserving its objection by bill of exception, but not otherwise.

█ There is no merit, we believe, in plaintiff in error's assignment of error to the action of the court in thus putting it to trial on defendant in error's cross-action, nor proposition thereunder. Much the same point was raised in Commercial Standard Ins. Co. v. City Memorial Hospital, Tex.Civ.App., 107 S.W.2d 724, and was there ruled without merit. As a part of its own case, plaintiff in error pleaded that an appeal from the award and determination of the board was prosecuted to "this", the trial, court in this case. The appeal was filed in due time, and the petition filed by the insurance carrier (plaintiff in error) contained the necessary jurisdictional allegations, and defendant in error made his appearance in answer to the petition and filed his cross-action. Plaintiff in error, therefore, did what was necessary under the Workmen's Compensation Act to vest the court with jurisdiction, and to vacate the award of the Board. Jasper v. Liberty Mutual Ins. Co., Tex.Civ.App., 119 S.W.2d 386, 387. "The statute gives the appealing carrier which has perfected its appeal and brought the claimant into court to the extent of filing an answer and cross-action an absolute right to have the issue determined by the court, with the burden upon the claimant to prove his case. * * When all parties were before the court, * * * the award was vacated, and, except for jurisdictional purposes, was as though it had not been. Texas Reciprocal Ins. Ass'n v. Leger, 128 Tex. 319, 97 S.W. 2d 677; Zurich General Accident & Liability Co., Ltd., v. Rodgers, 128 Tex. 313, 97 S.W.2d 674." Id. In other words, in compensation cases, the insurance carrier, in appealing from the Board's award, is a nominal plaintiff, but in reality occupies the relation to the claimant of defendant,

—Art. 8307, R.S.1925, section 5, Vernon's Ann.Civ.St. art. 8307, § 5, provides that upon appeal the court shall determine the issues "upon trial de novo and the burden of proof shall be upon the party claiming compensation." In the instant case, therefore, plaintiff in error, by appealing to the trial court, invoked its jurisdiction to try de novo the claimant's claim against it for compensation. Having thus submitted itself to the trial court's jurisdiction, it was subject to the exercise of the court's jurisdiction on appearance day, October 3, 1938, at the time when it advanced its contention that its attorney was present for the sole purpose of challenging the court's jurisdiction to pass upon the claimant's claim against it for compensation—a jurisdiction which plaintiff in error had itself invoked. Plaintiff in error's claim as to the court putting him to trial on October 17, and failure to pass upon his exceptions, are predicated upon its theory that the court had no jurisdiction, and no claim is advanced that the court abused its discretion. Without holding that plaintiff in error has properly reserved his exception to the court's refusal to pass on its exceptions when presented on October 17, it is apparent that no question of abuse of discretion is in the case, or claimed by plaintiff in error to be.

 Plaintiff in error has assigned as error various parts of defendant in error's argument before the jury. Those parts of the argument which were not complained of at the time of being made, seem to us to have been waived, and therefore any inquiry as to their propriety would appear to be academic. Plaintiff in error objected to the following argument as being inflammatory, made with reference to special issues submitted to the jury with reference to whether defendant in error was working for the Texports Stevedore Company on the day of the injury:

"Certainly he wasn't working for anybody else, because the evidence hasn't shown he was working for anybody else. And to further substantiate that point, Mr. Peppers received 37 weeks compensation. From whom? From the Texas Employers' Insurance Association, the company that carried on Texports Stevedore Company, Inc. Do you think for one minute that the Texas Employers' Insurance Association was going to pay anybody one thin dime, let alone 37 weeks compensation, if he wasn't injured in the course of his employment, upon which the company carried the policy of insurance."

We would not feel justified in saying that it is not a reasonable deduction and inference from the fact of payment being made to a claimant for compensation by the carrier of insurance, that such insurer had sufficiently investigated the facts to find such claimant was insured by its policy of insurance, as claimed by the claimant. Whatever else might have been objected to, it cannot be said not to have been relevant to the point for which it was urged. That such argument was inflammatory we are unable to see. No insurance carrier is obligated legally or morally to pay compensation to a complainant that was not an employee of some one holding a policy of insurance from such carrier. The assignments are overruled.

We have found it impossible to discuss all of the assignments which plaintiff in error has urged. Such as have not been discussed have been considered, and are overruled.

Judgment of the trial court is affirmed.

Affirmed.