TEXAS FIREWORKS CO. v. GUNN.*
(No. 7246.)

(Court of Civil Appeals of Texas. Galveston. Oct. 26, 1916. Rehearing Denied Nov. 16, 1916.)

1. MASTER AND SERVANT ⟨⟩279(5)—INJURIES TO SERVANT—NEGLIGENCE OF MASTER—EVIDENCE—SUFFICIENCY.

Evidence *held* sufficient to sustain finding of negligence on the part of the foreman employed by the master in manufacture of fireworks in furnishing a mixture whose qualities were unknown, in directing the injured servant to strike the powder a hard blow and in allowing unnecessary quantities of explosives to collect in the room.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 978; Dec. Dig. ⟨⟩279(5).]

2. MASTER AND SERVANT ⟨⟩107(7)—INJURIES TO SERVANT—NEGLIGENCE OF MASTER.

There is no negligence in the mere fact that the master employed explosives in the manufacture of fireworks, but he is not thereby discharged from using reasonable care, which demands increased watchfulness and greater caution in proportion to the dangerous nature of the instrumentality employed.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 202; Dec. Dig. ⟨⟩107(7).]

3. MASTER AND SERVANT ⟨⟩278(3)—INJURIES TO SERVANT—NEGLIGENCE OF MASTER.

Facts tending to show negligence on the part of the master in creating conditions alleged to have caused the injuries are not negatived by the fact that an explosion of fireworks in process of manufacture was unusual or extraordinary.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 958; Dec. Dig. ⟨⟩278(3).]

4. TRIAL ⟨⟩133(6)—ARGUMENT OF COUNSEL—CURE OF ERROR.

Error, if any, in permitting counsel to argue, in a servant's action for injuries by explosion of fireworks, in process of manufacture, that in another place there had been such an explosion and the master had been held liable in damages therefor, is cured by a specific instruction to the jury to disregard it.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 316; Dec. Dig. ⟨⟩133(6).]

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Action by F. M. Gunn against the Texas Fireworks Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Walter E. Monteith and Andrews, Streetman, Burns & Logue, of Houston, for appellant. Atkinson, Graham & Atkinson, of Houston, for appellee.

LANE, J. This suit was instituted in the district court of Harris county by F. M. Gunn, hereinafter called "appellee," against Texas Fireworks Company, a corporation, to recover for personal injuries suffered by him while at work for appellant, which he alleges was caused by reason of an explosion of certain fireworks and other explosive matter on account of the negligence of said appellant company. Judgment was rendered for appellee for $1,645.

In appellee's petition it is in substance alleged that as an employé of appellant he was working under the direction and orders of one Wallace Clark, who was the foreman of appellant; that under the direction of said foreman he was, at the time of the explosion which caused his injuries, engaged in filling cases or cartridges with powder furnished to him for that purpose by said foreman, which said powder would explode from the effect of a blow; that he was put to work in filling said cartridges in a very small room; that at said time he was inexperienced in the performance of such work; that he had been engaged at such work for a period of three days only prior to his injuries and had no knowledge of the

properties or dangerous character and quality of the powder so furnished to him, or of the work being performed; that said foreman knew, or by ordinary diligence could and should have known, that said powder was a dangerous explosive and that the same would explode if struck a hard blow; that neither said foreman, nor anyone else, gave him any information as to the dangerous qualities of said powder, nor instructions to be careful in handling the same, but, on the contrary, said foreman directed him, while he was filling one of said cartridges with said powder, to strike the powder harder than he had been striking it, so as to fill said casing or cartridge more firmly; that, in obedience to said directions, he did strike said cartridge with greater force; that the force of said blow caused said cartridge to explode with great force; that said explosion ignited a large quantity of other combustible and explosive matter and material, which said foreman had negligently permitted to accumulate and remain in said small room where he was performing his work, in close proximity to where he was at work; that all of said combustible and explosive material ignited and exploded, and that by reason of such explosion he suffered serious and permanent bodily injuries (setting out specifically the nature thereof); that by reason of said personal injuries he had suffered damages in the sum of $10,000; and that in addition to said personal injuries and damage he had suffered damage by reason of loss of time, and payment of necessary medical and doctors' bills, in the sum of $693, for all of which he prayed judgment. He further alleged that said alleged negligent acts of said foreman was the proximate cause of all of his said injuries and damages.

Appellant answered by general and special denial of all the allegations of appellee's petition, alleged assumed risk and contributory negligence by appellee, and that the accident was unavoidable and one which could not have been foreseen in the exercise of ordinary care.

The cause was tried before a jury, which returned a verdict in favor of appellee for the sum of $1,645. This verdict was approved by the court and judgment entered accordingly.

Appellant's main contention for a reversal of the judgment of the trial court is that there was no evidence sufficient to support the finding by the jury of negligence upon the part of appellant in any of the particulars pleaded by appellee. Under this contention it submits the following propositions:

"(1) There was no evidence sufficient to support a finding by the jury of negligence upon the part of the defendant in furnishing to the plaintiff the powder with which plaintiff was working.

"(2) There was no evidence to support a finding by the jury of negligence upon the part of Wallace Clark in giving the direction to plaintiff to hit the powder with greater force.

"(3) There was no evidence sufficient to support a finding by the jury of negligence upon the part of the defendant in permitting other material to accumulate in the room where plaintiff was working.

"(4) There being no evidence sufficient to support a finding by the jury of negligence upon the part of the defendant in furnishing to the plaintiff the powder with which he was working, or, through Wallace Clark, in directing the plaintiff to tamp the material harder, or in permitting other material to accumulate in the room where the plaintiff was working, and there being no other grounds of negligence submitted, the verdict is manifestly without support in the evidence."

In determining the question as to whether the evidence was sufficient to authorize the court to submit the question of negligence on the part of defendant in the particulars alleged, and to support the finding of the jury on that issue, it is only necessary to examine the testimony which tends to support the same, which we will undertake to do.

The undisputed evidence shows: That the formula usually used by the defendant company in making "Niagara Falls" was a mixture of potash, aluminum, fine and flitter, meal powder, shellac, and dexterine; that the process of making such fireworks consisted in filling a shell or casing four or five inches long and about the size of a broomstick in diameter, with the formula above described, which was made up by the officers and employés of the appellant company; that when this mixture was placed in the shell or casing it would be tamped with a wooden stick about eleven or twelve inches long, by inserting the same in the shell and forcing it against the material by use of a hammer. At the time of the explosion which caused the injuries to appellee, he had been working for appellant for about two weeks, but had been engaged in making "Niagara Falls" only three days. He was inexperienced in such work and had no knowledge of the composition of the material used therein, nor the dangers incident to making said "Niagara Falls." On the occasion in question, appellee, F. M. Gunn, had filled one or two shells when Wallace Clark, who was foreman of said appellant company, with authority to hire and discharge employés of said company, and under whose immediate direction and orders appellee was working, and who had put him to making "Niagara Falls," took the filled shells to test them so as to determine whether or not they would give the proper effect. During this process of testing, Wallace Clark added to said mixture being used certain material until the mixture was as he wanted it. Then after appellee had filled a shell with the mixture as added to, said Clark told him to tamp it harder than he had been tamping it, for the purpose of packing it more firmly. As appellee struck one of the shells, in obedience to the instructions of said foreman Clark, it exploded and ignited other combustible and explosive ma-

terial which Wallace Clark had brought into the small room, about six by eight feet in size, which was being used as a place in which to manufacture fireworks; that this material so allowed to accumulate was ignited by the explosion of said shell and exploded with great force; that by reason of such explosion appellee was badly and dangerously burned.

A. F. Gunn testified that he was told by A. F. and Wallace Clark, officers of appellant company, that the material used in making fireworks was dangerous; that he had seen them test the material used in making same, by striking it with a hammer; and that it always popped or exploded, except one time when they said it was not strong enough.

Wallace Clark testified that it was not customary in the manufacture of fireworks to leave a lot of explosive material in the room where the same was being made.

Dr. Tilson testified that meal powder contains sulphur, charcoal, and saltpeter; that if chlorate of potash and meal powder were mixed together it would explode; that the scientific opinion among those who knew the danger of handling a combination of potash, sulphur, charcoal, and saltpeter is that it is more dangerous than handling ordinary gunpowder, because chlorate of potash is not a constituent of ordinary gunpowder, because it is more explosive, is a more violent explosive than gunpowder. Mixed with sulphur and these other elements, it is regarded as a particularly dangerous material to handle where it is subject to concussion.

Mike Zabo testified:

That he had been at work nine years in the fireworks business, two years for defendant. That "chlorate of potash will not explode by itself. You can mix something with it that has sulphur in it to explode. If you mix sulphur with it, or something that has sulphur with it, you make it explode by rubbing it hard or hitting it hard. If you hit it hard, it explodes. If you rub potash, it explodes just as if you had hit it hard. The safe way to handle it is if a man works easy with it. It is dangerous anyway, and it is dangerous no matter how you handle it. You have to be careful with it; potash, I mean. In filling the cartridges with material for fireworks, they tap easy anything that has got potash in it. If you have not got any sulphur in it, you can tap it; but, if there is sulphur in it, you have to handle it easy. I have never tried it with as much as two or three ounces of it; I did not want to take chances. If I know it is dangerous, I stay away from it. I know it is dangerous because I know what the chemical is. I know potash. If there is too much of it, a man cannot hit it, because he might get his head blowed."

Appellee, F. M. Gunn, testified that he had had no experience in the manufacture of fireworks and that he knew nothing about the dangers incident thereto, and that he had been engaged in such work three days prior to the explosion.

A. F. Clark testified that he was secretary and treasurer of appellant company; that the potash he used was chlorate of potash; that if you put sulphur and carbon with chlorate of potash it will make a mixture which will be exploded by concussion; that charcoal is a carbon; that a mixture having ingredients like sulphur, charcoal, and potash together would probably explode by concussion; it would be as dangerous as any fireworks are dangerous, and he would not like to use it.

The appellee, F. M. Gunn, also testified that just before the explosion Wallace Clark made additions to the powder furnished to him with which to make "Niagara Falls," and said that it was what he wanted, but that he did not know "what in the hell he had in it." This expression was made by Wallace Clark just before the explosion. He also testified that the entire explosion was instantaneous, all at the same time; that it blew him out of the door and about 20 feet from where he was standing.

From the undisputed evidence and testimony of witnesses above stated, the jury, under proper instructions, was authorized to find:

First, that the mixture or powder prepared by appellant's foreman, Wallace Clark, and given to appellee to make "Niagara Falls," contained potash, carbon, and sulphur, and that such mixture or powder would explode from the effect of a blow.

Second, that the mixture or powder so given by Clark to appellee, just before the explosion, was not the formula which had been generally used by appellant in making such fireworks, but, on the contrary, was a mixture made up by said Clark by adding other ingredients thereto to such an extent that he did not know just what it contained.

Third, that said Clark negligently directed appellee to tamp the mixture, so given by him to appellee, harder than he had been tamping it, and that in obedience to said directions appellee did so tamp it, and that by reason thereof the shell being filled and tamped by appellee exploded.

Fourth, that at the time of explosion appellee was inexperienced in making such fireworks, was ignorant as to the contents of the powder furnished him to make the same, that he had no warning from any one as to the dangers incident to handling such powder, nor had he from any source any knowledge of the danger usually incident to the making of such fireworks.

Fifth, that prior to said explosion which injured appellee, the said Wallace Clark had brought and deposited considerable quantity of combustible and explosive material into the small room in which appellee was making "Niagara Falls" in close proximity to where appellee was at work, and that said combustible and explosive material was ignited by the explosion of the shell upon which he was working, and caused the same to explode and burn, and that by reason thereof appellee was seriously and dangerously burned.

Sixth, that said explosion was the result

of negligence on the part of Wallace Clark, in all the particulars alleged, and that such negligence was the direct and proximate cause of appellee's injuries.

[1] This being true, we think such evidence was amply sufficient to authorize the court to submit, and the jury to find, negligence on the part of Wallace Clark, superintendent and foreman of appellant, in all three particulars alleged, although appellant offered evidence tending to rebut the same.

[2] There is, of course, no negligence in the mere fact that appellant employed explosives in the manufacture or making of fireworks, for such is the usual and necessary method by which said fireworks are manufactured; but the fact that such dangerous materials may be used without exposing the master to a charge of negligence does not by any means imply that he is discharged from ordinary obligation to use reasonable care to protect his servant against injury therefrom. Indeed, reasonable care demands increased watchfulness and greater caution in proportion to the dangerous nature of the instrumentality employed. The negligence charged in this case is not founded upon the mere fact that appellant used explosives in the prosecution of its work which under some conditions and circumstances might explode, but upon the theory: (1) That appellant furnished appellee with a mixture from which he was to make fireworks, the exact qualities of which were unknown to the master, without using that degree of care required of the master under the existing circumstances so as to protect the servant from probable danger; (2) that its foreman directed the servant to strike the powder so furnished a hard blow without having first analyzed or tested the same so as to determine whether or not it would likely explode by reason of said blow, and to avoid probable injury to the servant thereby; and (3) that its foreman negligently accumulated an unnecessary quantity of explosives in the small room used by appellee in making said fireworks. The determination as to whether or not appellant was guilty of negligence in the particulars alleged was for the jury. For this court to say as a matter of law that the acts of appellant's foreman in doing the three things alleged as negligence was not negligence would, in our judgment, be a very serious encroachment upon the province of the jury. It is no answer to appellee's charge to say that no such explosion had ever before occurred. The facts tending to show negligence on the part of appellant in creating the conditions as alleged is not negatived by the fact that the explosion was an unusual or extraordinary occurrence. Waters Pierce v. Snell, 47 Tex. Civ. App. 413, 106 S. W. 170; McGray v. Ry. Co., 89 Tex. 168, 34 S. W. 95; Railway Co. v. Cassady, 184 S. W. 180; Brown v. West Riverside Coal Co., 143 Iowa, 662, 120 N. W. 732, 28 L. R. A. (N. S.) 1260; Ruling Case Law, vol. 2, § 50, p. 695.

The conclusions above expressed fully answer the main contention of appellant, and it is therefore overruled.

What has been said in the discussion of appellant's first and main contention also disposes of the contentions made by assignments 2, 3, 4, 5, 6, 7, 8, and 9.

By appellant's tenth assignment complaint is made of so much of the trial court's main charge which reads as follows:

"Now, if you believe from a preponderance of the evidence * * * that the defendant was negligent in furnishing powder of such highly explosive character that it would explode by force of a blow, if it did, or that the defendant's servant in charge of plaintiff was guilty of negligence in directing plaintiff to strike said powder with increased force, if he did, or if defendant permitted a large quantity of explosives to accumulate in a small room in which plaintiff was working, if he did, and that when said cartridge that plaintiff had exploded, if it did, and you further believe that it ignited other explosives in said room, if any there were, and thereby increased the original heat of the explosion, if it did, and largely increased the injuries to the plaintiff herein, if it did, * * * then you will find for the plaintiff and assess his damages as hereinafter directed."

Following that portion of the court's charge complained of, the court instructed the jury as follows:

"If you find from the evidence that the defendant was guilty of negligence in any, or all, of the particulars above alleged, but that said negligence, if shown, was not the proximate cause of the plaintiff's injuries, if any, as such term has been hereinafter defined, or if you believe from the evidence in this case that plaintiff's injuries, if any, were the result of an unavoidable accident which could not have been foreseen in the exercise of ordinary care upon the part of the defendant, then you are instructed that in any, all, or either of these events the plaintiff cannot recover, and if you so believe you will return your verdict for the defendant."

After a careful examination of the charge of the court as a whole, we have reached the conclusion that it fairly presents the issues as made by the pleadings and evidence, and that that portion of the same complained of did not probably result in injury to appellant. The tenth assignment is overruled.

[3, 4] Counsel for appellee in argument to the jury made use of the following language:

"In San Francisco, Cal., several years ago, there was an explosion of a powder factory which blew up and killed every employé working therein, and no one was able to assign any cause for the explosion; but notwithstanding this the owners of the factory were made to pay damages."

Appellant makes this argument the ground of its eleventh assignment of error.

Upon objection to such argument being made, the court instructed the jury that such argument was improper and that they must not consider the same in arriving at their verdict. Appellant contends that, notwithstanding the instructions of the court, such argument is cause for a reversal of the judgment of the trial court, because it was calculated to excite the prejudice of the jury

or furnish the jury a reason for a verdict other than on the evidence. This contention cannot be sustained. A judgment will not be reversed for improper remarks of counsel, where the jury were specially instructed by the court that the remarks were improper and not to consider them in considering their verdict, and neither the size of the verdict nor anything else in the record indicates that the jury were improperly influenced by the remarks. It will be presumed that the jury were men of ordinary intelligence, and that they obeyed the instructions of the court. M., K. & T. Ry. Co. v. Lightfoot, 48 Tex. Civ. App. 120, 106 S. W. 395; Banner v. Thomas, 159 S. W. 105; Radford v. Lynn, 65 Tex. 471; Beaumont Tr. Co. v. Dilworth, 94 S. W. 355.

The undisputed evidence with reference to the injuries and damages suffered by appellee was as follows:

Dr. Jones testified:

"I treated F. M. Gunn in May, 1914. When I went to see him, I found he had been badly burned over his face and arms. * * * Both arms and hands were burned clear from the end of the fingers up to his shoulder. His left arm was burned worst, but they were both burned. His condition at that time looked to be serious. * * * His eyes were practically closed, and his whole head was swelling up. * * * His hands, it seemed the bones were all torn on them. * * * His arms here, you could see between the bones. * * * His face sloughed off, too. I thought he was going to lose his nose, but it grew back again. His ears were pretty badly burned. The right ear was the worst burned. It was burned clear around, and it all sloughed off, and we had to build up the flesh again. * * * I don't see how it could be any worse pain for anybody than that. It was just a condition where the human body was subjected to the greatest suffering it possibly could be. * * * I can't say the number of times that I saw him, but it was right around four weeks. We had a trained nurse there, day and night. I think the services of a trained nurse were necessary to save his life, because I worked with him day and night, and it was a hard pull to get him through; there is no question about that. It was a bad case. * * * I spent two or three hours a day with him, in the dressing. * * * He could not have lived over 36 hours without that attention. I charged $150 for my services. I considered that a very reasonable charge. I made about fifty visits of from one to three hours. From what I know of his injuries they are to a certain extent permanent. * * * He does not look like the same fellow he did. * * * His muscles never will be what they were before. * * * The muscles of his arms are weakened. We would say it would be a kind of atrophy of the muscles. After being burned, it cut off the blood vessels, and the muscles did not develop again. * * * The blood vessels are all burned off from the surface, * * * and in this case never will be regained, because those blood vessels never will be replaced. * * * I did not give any hope that it would be like it was normally. Nature will provide to a certain extent, but it will not bring back to the normal. That is utterly impossible."

A. F. Gunn testified:

"The plaintiff is my son. Mr. Howe was the trained nurse I employed. I agreed to pay him $30 a week. He charged me $90 for 21 days' services. I employed Dr. Jones to attend to my son, who charged me $150. He waited on him something like five weeks. Something like $60 was spent for drugs and medicines. Dr. Arnold's bill was $15. My son was earning $10 a week when working for the Texas Fireworks Company. My son was not able to work until December following."

Plaintiff testified as follows:

"In that explosion I was burned on my hands and face and arms and on my stomach in two or three places. The effect of the burn on my left arm was such that I have not got more than one-half of the strength in it now that I have had in it. It tingles all the time, and I wake up at nights and have to rub it. * * * The effect of the burn on my left hand is such that I can hardly use the fingers on it at all. * * * My right hand and arm were burned all over. My eyes, since the accident, are weaker than they were. * * * I can't read at night at all. My right ear is injured. I don't know, but there is a buzzing in there all the time, and about once a month I can hear that explosion the same as the day it exploded. Before I was hurt I weighed from 158 to 162 pounds. After I had partially recovered from the injury I had fallen to 117. * * * If I go to such manual labor as I used to do, I can't do it at all, because I have not the strength in this left arm as I used to have. I suffered for about five weeks after the injury to me, and the extent of my suffering was pretty bad. There was five days of that time I was blind and could not see anything. Then there were about four days after that that they kept the rag on my eyes. * * * My arm still hurts me. I lost every one of my finger nails on both hands. The explosion burned my face all over. You can see two or three streaks across here yet. I was 23 years old August 7, 1915. I lost from the 22nd of May, 1914, until February, 1915, as a result of this injury. I lost about nine or ten months' time because of the injury."

The judgment for appellee was for $1,645 only. There is nothing in the record tending to show that the jury was improperly influenced in behalf of appellee by reason of the remarks of counsel, complained of. The eleventh assignment is overruled.

The record discloses no error committed by the trial court in the trial of this cause. The judgment of the lower court is affirmed.

Affirmed.