Court of Civil Appeals of Texas.
Fort Worth.
March 10, 1934.

Rehearing Denied May 11, 1934.

Weeks, Morrow & Francis and Henry B. Penix, all of Wichita Falls, for appellants.

Harris & Martin, of Wichita Falls, for appellees.

LATTIMORE, Justice.

This is on appeal from a judgment for defendants in a trial before the court in a suit filed by appellants for an injunction.

Appellants operated an oil lease adjoining the farm of appellees, on which farm was an earthen water tank apparently out of repair. Appellants contracted in writing to "restore the dam" and repair the tank, and appellants and appellees were to have certain water rights therein, not necessary to be detailed here. Appellants did so restore the dam and constructed a spillway about eighteen inches deep on the north side of the lake. The soil is of a gumbo type and eroded readily. Over a period of years this spillway washed until it was some six or seven feet deep and twenty feet wide, except for a narrow piece of shore line in the spillway some three or four feet wide between the lake and the entrance to the washed portion of the spillway, from which narrow strip there was a waterfall of six feet in height to the bottom of the ditch when the lake overflowed and through which water was seeping into the wash. On February 8, 1932, the lake, covering some five acres, was full of water but not overflowing, being about twelve feet deep at the dam and six feet deep in the middle.

On that date appellees, by letter, notified appellants that the lake was out of repair and that this narrow strip would probably wash out at the next heavy rain and demanded that sufficient repairs be made by February 20, 1932, under pains of the loss by appellants of their rights in the lake water. Appellants called on appellees promptly, and all agreed that appellants should employ a tenant of appellee to make sufficient repairs.

For reasons not shown in the record, the tenant did not begin repairs until March 10th, at which time he placed some broken concrete blocks, quantity not shown in the record, and some old drag lines and automobile pieces in the wash. The trial court found that same were not sufficient to properly maintain the tank. On March 21, 1932, appellees notified appellants that the latters' rights in the water had terminated and proceeded to build a dam across the wash, lake shore high, and made a new spillway. The water was valuable to appellants in connection with their oil operations and to appellees for farm uses and as a fishing resort for which fees were collected.

The contract stated: "The life of this contract shall continue as long as the parties of the second part keep the said dam and tank in repair. Upon their failure to properly maintain said tank this agreement shall terminate."

We are unable to agree that appellants had the right to wait until the narrow strip actually washed out before their duty to repair arose. Webster defines the term "in repair" as "in a good condition with respect to soundness." We think the evidence is sufficient to support the finding of the trial court that the tank was not "in repair." Forfeitures are not favored, and we are not unmindful that in a case where the language of the contract prescribes a test which in some in-

stances, as in this, must be measured by opinion evidence, the court should scrutinize the evidence carefully and give effect to the charges only when same are serious in their effort and are more than a guess.

Nor do we mean to say that in every case the actual break of the lake would have deprived the appellees of the right to repair and preserve the life of their contract. That question is not before us. The appellees notified the appellants of the impending injury. The spring rains were in the offing. "In repair" includes more than "rebuild" and so does "properly maintain." When we look at the situation of the parties to the contract, the subject-matter, the irreparable nature of the damages, once this large body of water sweeps through the break and across the farm of appellees, we conclude that the language used included this very situation, and the termination of the contract was provided for to enable appellees to move promptly to avert this catastrophe. Time is of the essence.

Affirmed.