

# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

May 11, 1973

The Honorable James H. Whitcomb
County Attorney, Colorado County
P. O. Box 867
Columbus, Texas 78934

Opinion No. H- 38

Re: May Commissioners Court
accept a bid as depository
bank either with an illegal
rate of interest or pro-
viding that the bank will
pay "the legal rate of in-
terest" and related ques-
tions.

Dear Mr. Whitcomb:

You have requested an opinion on questions regarding applications
submitted under Article 2546, V. T. C. S. , which sets out the procedures
for the selection of county depositories. Article 2546 provides:

"It shall be the duty of the Commissioners Court
at ten o'clock a. m. on the first day of each term at
which banks are to be selected as county depositories,
to consider all applications filed with the County Judge,
cause such ap)lications to be entered upon the minutes
of the Court and to select those applicants that are
acceptable and who offer the most favorable terms and
conditions for the handling of such funds and having
the power to reject those whose management or con-
dition, in the opinion of the Court, does not warrant
placing of county funds in their possession. The
County Commissioners Court shall have the power
to determine and designate the character and amount
of county funds which will be deposited by it in said
depositories that shall be 'demand deposits, ' and
what character and amount of funds shall be 'time
deposits, ' and <u>may contract with said depositories
in regard to the payment of interest on 'time deposits'
at such rate or rates as may be lawful under any Act
of the Congress of the United States and any rule or</u>

regulations that may be promulgated by the Board of
Governors of the Federal Reserve System and the Board
of Directors of the Federal Deposit Insurance Corpora-
tion.  When the selection of a depository or  depositories .
has been made, the checks of those applicants which
have been rejected shall be immediately returned.  The
check or checks of the applicant or applicants whose
applications are accepted shall be returned when said
depository or depositories enter into and file the bond
required by law and said bond has been approved by
the Commissioners Court and the State Comptroller,
and not until such bond is filed and approved.  The term
'demand deposits', as used herein, shall mean any
deposit which is payable on demand, and the term
'time deposits', as used herein, shall mean any deposit
with reference to which there is in force a contract,
that neither the whole nor any part of such deposit may
be withdrawn by check or otherwise prior to the ex-
piration of the period of notice which must be given in
writing in advance of withdrawals. " (Emphasis added)

According to your request, only two banks submitted applications  .
or bids.  The application from bank H contained varying interest rates on
certificates of deposit of less than $100, 000, depending on the maturity
period of the  certificate:

"We submit to you our bid as your County Depository for
all funds as follows: We will pay interest on Certificates
of Deposit on denominations of less than $100, 000. 00 as
follows:

C.of D.  with three month maturity   · 4 1/2% .
C.of D.  with six month maturity      5% interest payable quarterly.
C.of D.  with twelve month maturity   5-1/2% interest payable quarterly
C.of D.  with maturity of twelve
months or longer                      5-3/4% interest payable quarterly
C.of D.  in denominations of $100, 000. 00 or more issued for one year
or longer                             10..12% interest payable quarterly

·  Enclosed is our last published statement of the financial condition
of this bank.  Also enclosed is our Houston Exchange in the amount.
of $1, 000. 00 guaranteeing that this bank will make the required bond
according to the law and ruling of this Honorable Court. "

The maximum allowable interest rate of certificates set by the Federal Deposit Insurance Corporation and the Federal Reserve System is 7 - 1/2% per annum except that no maximum is prescribed for certificates of deposit maturing in 30 to 89 days.

The bid of bank C was: "We will pay the legal rate of interest on certificates of deposit according to your request, and/or wishes, depending on maturities during this two year contract . . . . "

A deposit of $1, 000 was submitted with each bid.  The Commissioners Court has accepted the bid of bank H but its bond has not been approved.

Five questions have been presented.  The first two are:

"(1)  Does the Commissioners Court have the authority to accept this bid?"

"(2)  Assuming the Court does not have the authority to accept the bid because of the unlawful rate in the written bid, would the entire bid be illegal, or only the one provision?"

Under Article 2564, the Commissioners Court has considerable discretion in selecting a depository.  Citizens State Bank of Roby v. McCain, 274 S. W. 2d 184 (Tex. Civ. App. , 1954, no writ).

A contract that violates a valid statute is illegal.  Woolsey v. Panhandle Refining Co. , 116 S. W. 2d 675 (Tex. Sup. 1938) and Lewis v. Davis, 199 S. W. 2d 146 (Tex. Sup. 1947).  The Commissioners Court may not enter into an illegal contract.

If the bid of bank H is construed to be an offer to issue certificates of deposit in amounts of $100, 000 or more, with maturities of one year or more, and to pay 10. 12% interest on such certificates, then the proposed contract would be clearly illegal.  If, on the other hand, the bid may be construed to be an offer to issue certificates of deposit, with maturities of 30 to 89 days, but with the understanding that such amounts of money would be held by the bank for periods of one year or longer, with the certificates being renewed from time to time within the year, .

then the offer to pay 10.12% interest for that period would not be illegal, inasmuch as interest rates on 30 to 89 day notes are not regulated. We are informed that performance in this manner to avoid an illegal rate of interest is not uncommon.

It is not possible for us to determine, from the bid itself, which of the above two alternatives was intended by the bank. It is significant that in its bid, with regard to certificates of deposit for less than $100,000, the bank consistently used the word "maturity" in conjunction with the time periods discussed. However, in connection with the bid for denominations of $100,000 or more, the word "maturity" is not used, and the bank simply offered to pay 10.12% on such certificates "issued for one year or longer". The term "issue" is defined in § 3.102 of the Business and Commerce Code, as follows:

> " 'Issue' means the first delivery of an instrument to a holder or a remitter."

The term "maturity", on the other hand, means the date on which a negotiable instrument is due and payable. Vestal v. Texas Employers Insurance Association, 285 S.W. 1041 (Tex. Comm. App., 1926).

Without more information than we have been provided about the intentions of the parties in this instance, and without any information as to the past custom and usage of these parties, we are unable to resolve the ambiguities in bank H's bid, and are unable to say whether or not it is a valid bid.

In answer to the second question, bank H's application was submitted "as your County Depository for all funds." There is no provision indicating that the bid is for anything less than all items listed in the bid. Fessman v. Barnes, 108 S.W. 170 (Tex. Civ. App., 1908, no writ). If the portion is illegal, it is a part of the entire bid and both it and the legal portions should be considered as one and the entire bid should be rejected.

The Texas rule on "competitive bidding" has been stated in the following manner:

> " 'Competitive bidding' requires due advertisement,
> giving opportunity to bid, and contemplates a bidding
> on the same undertaking upon each of the same material
> items covered by the contract; upon the same thing. It
> requires that all bidders be placed upon the same plane
> of equality and that they each bid upon the same terms
> and conditions involved in all the items and parts of
> the contract . . . . Its purpose is to stimulate compe-
> tition, prevent favoritism . . . for the best interests
> and benefit of the taxpayers . . . ."(emphasis added).

Sterrett v. Bell, 240 S. W. 2d 516, 520 (Tex. Civ. App. , 1951, no writ).
See also, Texas Highway Commission v. Texas Association of Steel
Importers, 372 S. W. 2d 525 (Tex. Sup. , 1963).

Until the bond is approved, there is no final contract and the County
can withdraw its approval. The Citizens State Bank of Roby v. McCain,
supra.

The third question is:

> "Assuming the court does not have the authority to
> accept the bid because of the unlawful rate in the
> written bid, can the county keep the $1, 000. 00
> submitted with the bid?"

The statute requires the county to return the deposits of all rejected
bidders when a successful bidder is selected. To construe it to allow
the county to retain the deposit of a bidder who is selected and then
rejected would result in the unequal treatment between unsuccessful bid-
ders and would have characteristics of a forfeiture, not favored by the
law. Manton v. City of San Antonio, 207 S. W. 951 (Tex. Civ. App. , 1918,
err. ref'd. ) and Mogren v. Goetze, 71 S. W. 2d 950 (Tex. Civ. App. , 1934,
err. dis'm. ). It is, therefore, our opinion that the County cannot keep
the deposit submitted with the bid in question.

The fourth question presented is:

"Once a Commissioners Court has accepted a bid
as county depository, subject to bond (or pledge contracts)
approval, would the county be subject to any liability if
the court rescinded its order and selected another bank?"

In the Citizens State Bank case, supra, suit was brought by the
State bank selected by the Commissioners Court for damages for loss
of profits due to the depositing of county funds in a National bank. The
court specifically stated:

". . . In the absence of a showing that appellant's
bond or security was approved, there was no final
contract between the parties and appellant acquired
no vested rights which would prevent the Commissioners
Court from rescinding its prior order." (274 S. W. 2d at
186).

See also, Liquidation of People's Bank of Butler, 127 S. W. 2d 669 (Mo.
Sup. 1939). We are of the opinion that the County would have no liability
under the facts stated and the cases cited.

The fifth and remaining question is: "Would a bid based upon 'the
legal rate of interest' on Certificates of Deposit be a valid bid?

Article 2564, supra, allows the Commissioners Court to contract
in regard to the payment of interest on "time deposits" at "such rate or
rates as may be lawful: under regulations of the Federal Reserve System
and the Federal Deposit Insurance Corporation.

If the bid in question is a bid based upon the maximum legal interest
rate, the bid would bind the applicant to pay the maximum rate on each
category of certificates of deposit. However, on certificates for $100,000
or more for 30 to 89 days, there is no maximum interest rate specified
by federal law. In this area, the bid would be incomplete. It sets no
rate for such certificates of deposit and does not specify whether the
applicant is bidding on every category of certificate.

## S U M M A R Y

Where a bank submits an application to be the county depository under Article 2546, Vernon's Texas Civil Statutes, and purports to bid for all funds, the bid must state a legal rate of interest for time deposits of all amounts and lengths of time.  Resort may be had to custom and usage to determine the scope and terms of a bid.

When such a bid is construed to omit relevant items, or to call for illegal terms, it cannot be later corrected and cannot be accepted.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee